## The Lake Erie and Western Railroad Company

*v.*

## John M. Scott.

*Filed at Springfield March 31, 1890.*

1. Eminent domain—*property "damaged"—public highway made less safe in its use—rights of adjacent owner.* Where a railroad is constructed alongside of a public highway which adjoins a farm, the damages which the owner of the farm shares, in common with the public, by reason of the dangers and unsafety of travel on the highway, are not recoverable.

2. But where the highway gives the farm an increased value, depending, to some extent, upon the location of the buildings and the character and degree of use the owner may have for such highway, then, in so far as the use of the highway is interfered with or destroyed by the location and operation of the railway near it, the value of the farm will be lessened, and for that he will be entitled to recover damages. As to this he sustains some pecuniary damage in excess of that sustained by the public generally.

3. There is no good reason for distinguishing between an injury arising from an interference with the land owner's right to the advantages the highway gave his farm, caused by a physical obstruction placed therein, and where the same kind of an injury is produced by the operation of trains beside it. In either case, the advantages given the farm by the highway are to some extent destroyed, and the land lessened in value.

4. If the result of operating a railway injures a person's farm in a way not common to the public, and thereby makes it less valuable, he is damaged for the public use. Such operation being lawful, and confined to the right of way, will not release the railway company from liability.

5. Same—*the word "damaged"—its meaning—in this connection.* The constitutional provision that private property shall not be taken or *damaged* for public use without just compensation, is intended to cover cases where damages are caused by acts that are legal, and entirely within the power of the corporation performing them, but in the doing of which, for the use and benefit of the public, private property is damaged.

6. Same—*measure of damages—of damages present and prospective—in the same suit.* In a suit against a railway company to recover damages to the plaintiff's farm by the construction and operation of its road alongside a public highway adjoining the farm, it is the right which

the railway company has, at its pleasure and for all future time, to operate its trains, that at once depreciates the value of the farm, and not the effect produced by the passing of particular trains, or any particular injury or accident that may occur to the land owner's property therefrom. Therefore the right to compensation for the damage will arise at the time of the construction of the road, and they may then be determined once for all.

Appeal from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of McLean county; the Hon. Owen T. Reeves, Judge, presiding.

This case comes to this court on appeal from the Appellate Court, the judges of that court having certified that it involves questions of law of such importance, on account of principal and collateral interests, that it should be passed upon by this court. The facts and questions of law involved in the case are sufficiently stated in the opinion filed by the Appellate Court, which is as follows:

Conger, J. "Appellee owns a farm of about two hundred and sixteen acres, bounded on the west by a public highway sixty-six feet wide, running from the city of Bloomington in a northerly direction, known as the White Oak Grove road. The whole of the farm lies east of this highway, except at one point, where a corner of one of the tracts composing the farm crosses the highway, making a small triangle, containing from three to six one-hundredths of an acre, on the west side of such highway. Appellant's railroad was located and constructed in the middle of its right of way, which was one hundred feet wide, lying west of and adjoining the White Oak Grove road. The railroad was separated from the farm by the highway, except where it touched the little triangular piece lying west of the highway. In constructing the railroad at this point, a cut was made, and a portion of the earth on this triangle was dug away and removed. Appellant took no steps to have this land condemned. When the sub-contractor was grading at this point, appellee notified him not to go upon this triangle, as it

was his property, and the right of way had not been secured over it. In explaining their action, appellant's counsel say: 'Upon investigation it appeared so small and trifling, the subcontractor was advised to go ahead with his work, and that the railroad company would settle with appellee.' No settlement, however, was made, and appellee instituted the present suit.

"The amended declaration, upon which the case was tried, was in the nature of an action on the case, in which damages were claimed for the trespass and excavation upon the triangular piece lying west of the highway, and for damages to all the land lying upon the east side of the highway. In the declaration it is averred, that by reason of defendant entering upon and digging up and carrying away the soil and earth from plaintiff's land, and by reason of defendant constructing its said railroad, as above stated, so near to said highway and so near plaintiff's land, and continuing to operate the same, defendant thereby became liable to pay to plaintiff all damages that the construction and operation of its said railroad will cause or has caused to the residue of said body of land not in fact entered upon and despoiled. It is then further averred, the construction and operation of said railroad in the manner and way it is constructed and operated will and does greatly injure the rest of said body of land not entered upon and despoiled, in this, that it makes, and will through all coming time while such lands are used for farming purposes, the approach to and from the dwelling house, and the other buildings on the west side of said lands over said highway, unsafe and dangerous to travel on and over in carriages or other vehicles drawn by horses or other animals; that the deep cut and high embankment immediately in front of and near plaintiff's land makes the appearance of such farm unsightly, and otherwise injuriously affects it; and that the construction and operation of said railroad, as aforesaid, renders said farm less convenient and comfortable as a place of residence, and also renders such lands less safe and convenient for farming purposes,

particularly in handling stock upon it. It is then averred, that by 'reason of the wrongful acts and doings of defendant, as aforesaid, and the injuries done to plaintiff's lands, as aforesaid, the salable value of said land is thereby greatly decreased.'

"Pleas were filed by appellant, a trial had before a jury, who returned a verdict for appellee in the sum of $500, upon which judgment was rendered.

"There can be no question but that appellee was entitled to recover damages occasioned by the entering upon and removing or disturbing the soil upon the premises west of the highway, but it is strenuously insisted that for such damages to the remainder of the farm as are claimed in the declaration there can be no recovery.

"The evidence was conflicting. Appellee's witnesses testified that the construction and operation of the road would damage appellee's farm to the extent of six to ten dollars per acre,— decrease its rental and salable value; while the witnesses for appellant think there would be no substantial damage. Under these circumstances the jury were warranted in their verdict, if the law as applicable to the case was properly applied. The instructions given for appellee upon this subject were as follows:

"'2. The court instructs the jury, on behalf of plaintiff, that the true measure of compensation, where no land is taken for the right of way for a railroad upon which to construct a road-bed and track, is the difference between what the whole property would have sold for unaffected by the railroad, and what it would sell for as affected by it.

"'3. The constitution of this State declares: 'Private property shall not be taken or damaged for public use without just compensation,' and the jury are instructed, it will be presumed the framers of that instrument used the word 'damaged,' in that connection, in its ordinary and popular sense, which is, hurt, injury or loss, and 'that the damage contemplated by

the constitution' in cases where no land is actually taken 'must be an actual diminution of present value or of price, caused by constructing and operating the road, or a physical injury to property that renders it less valuable in the market if offered for sale.'

" '4. If the jury believe, from the evidence, that plaintiff is the owner in fee simple of the land described in the declaration, and that the defendant railroad company, in constructing its road-bed and track, entered upon any portion of plaintiff's said land and dug up and carried away the soil, and that such acts were a physical injury to such lands, or any part thereof; and if the jury further believe, from the evidence, the construction of defendant's road-bed and track along, near and adjacent to plaintiff's land, and its contemplated maintenance and operation, (if the jury believe, from the evidence, they are so constructed, and that defendant intends to maintain and operate the same,) are an actual damage to his lands, and do in fact render the same less valuable in the market if offered for sale—then the law is for plaintiff, and the jury should find for him. And the jury are instructed, as a matter of law, plaintiff is entitled to recover for any depreciation (if the jury believe, from the evidence, there has been any depreciation,) in the market value of plaintiff's lands not actually entered upon, by reason of the construction, maintenance and operation by defendant of its railroad as constructed, and also for any physical injuries done to that portion of plaintiff's land upon which defendant did actually enter, (if the jury believe, from the evidence, defendant did enter upon any portion of plaintiff's lands described in the declaration, and did cause any physical injuries to the same.)

" '5. The jury are further instructed, on behalf of the plaintiff, that in determining whether plaintiff's lands are lessened in value by reason of the construction and the proposed operation of the railroad, then the jury may consider the injury to plaintiff's lands, if any is proved, arising from the inconveni-

28—132 Ill.

ences actually brought about and occasioned by the construction
of defendant's railroad, although such damage might not be
susceptible of definite ascertainment; and may also consider
such incidental injury as the proof may show might or would
result from the perpetual use of the track for moving trains,.
or from the inconveniences in using said lands for farming
purposes and in handling stock upon it, if the proof shows such
railroad would occasion any such inconveniences; and they
may consider, generally, such damage as the evidence may
show, if any is reasonably probable to ensue from the construc-
tion and operation of the defendant's said railroad.'

"Witnesses for appellee seem to base their idea of the dam-
ages upon the supposition that the construction and operation
of the road so near the highway has rendered it dangerous and
unsafe to travel upon, made the egress and ingress from the
farm onto the highway with teams and stock more dangerous,
rendering the farm less safe and convenient, and thereby re-
duced the value of appellee's farm. Appellant insists that in
all this evidence 'appellee has shown no injury or damages
not suffered in common with the general public, for which the
law affords him no redress.' We can not assent to this view.
The damages spoken of by the witnesses in reference to making
the highway more dangerous, are, to some extent, shared with
appellee by the public, and in so far as they are common to
both, no right of action exists. But there are elements of dam-
age affecting the value of appellee's farm which do not in any
way affect the public. A highway beside a farm may, and
generally does, give it an increased value, depending, to some
extent, upon the location of the buildings and the character
and degree of use the owner may have for such highway. In
so far as its use is interfered with or destroyed, the value of
the farm is lessened, and for that the owner should recover,
for he sustains some special pecuniary damages in excess of
that sustained by the public generally.

"But it is urged that the damages claimed arise, not from any physical invasion or disturbance of appellee's property or actual encroachment upon the highway, but alone from the injury to the use and enjoyment thereof caused by the operation of the railroad,—that such operation being lawful, and confined to appellant's right of way, the damages arising therefrom to appellee would be *damnum absque injuria.* We admit there is force in this question; and, as.far as we are aware, this precise question has not been passed upon by the Supreme Court. The nearest approach to it is in the case of *Rigney* v. *City of Chicago,* 102 Ill. 64, where there was no direct interference with the premises of Rigney, but an obstruction placed in the street, at a distance therefrom, thereby injuring the use of the street; or, as stated in the opinion, 'it is not pretended or claimed that the plaintiff's possession has been disturbed, or that any direct physical injury has been done to his premises by reason of the obstruction in question. The *gravamen* of the plaintiff's complaint is, that the defendant, in cutting off his communication with Halsted street by way of Kinzie street, has deprived him of a public right which he enjoyed in connection with his premises, and thereby inflicted upon him an injury in excess of that shared by him with the public, generally, and it is for this excess he seeks to recover, and nothing more.' And the court say: 'If the lot and buildings of appellant are to be regarded as property, and not merely the subject of property, as, strictly speaking, they are, then there has clearly been no physical injury to it; but if by property is meant the right of user, enjoyment and disposition of the lot and buildings, then it is evident there has been a direct physical interference with appellant's property, and when considered from this aspect, it may appropriately be said the injury to the property is direct and physical.'

"We are inclined to think that there is no good reason for distinguishing between an injury arising from an interference with appellee's right to the advantages the highway gave his

farm, caused by a physical obstruction placed therein, as in the foregoing case, and where the same kind of an injury is produced by the operation of trains beside it.   In either case the advantages given the farm by the highway have to some. extent been destroyed, and the land lessened in value.

"If it be conceded that the result of operating the road has in fact injured appellee's farm in a way not common to the public, and thereby made it less valuable, it would seem to follow, as a necessary consequence, that it has been damaged for public use.   Such operation being lawful, and confined to the right of way, does not release appellant from liability, for it would clearly be liable for damages caused by an unlawful act, and, as we understand the constitutional provision that private property shall not be taken nor damaged for public use without just compensation, it means to cover cases where damages are caused by acts that are legal and entirely within the powers of the corporation performing them, but in the doing of which, for the use and benefit of the public, private property is damaged.   It follows, therefore, that appellant's proposition that 'a corporation is not liable unless an individual doing the same thing on his private property would be,' as applied to this case, is not sound.   An individual can not legally take or damage private property for public use, but a railroad company can lawfully do either, if in so doing it makes compensation.

"It has been suggested, that if this recovery can be sustained it would authorize repeated suits, upon the theory that a new injury is caused by every passing train, thus giving ground for successive actions.   This is a misapprehension of the true grounds upon which the right of recovery rests.   The damage to appellee is caused by the construction of the road in such place as that the proper and only way of operating it did, of. necessity, from that time injure the farm and lessen its value. It is the right which appellant has, at its pleasure, and for all future time, to operate its trains, that at once depreciates the

value of the farm, and not the effect produced by the passing of particular trains, or any particular injury or accident that may occur to appellee's property therefrom; hence, the damages arose at the time of the construction of the road, and were then capable of being determined once for all.

"Believing that this view of the law is within the spirit and meaning of the constitutional provision alluded to, and has been fairly applied by the court below, the judgment of the circuit court will be affirmed."

Messrs. Stevens & Horton, and Mr. James S. Ewing, for the appellant:

There can be no recovery when the elements of damage are speculative and imaginary, such as the danger of having horses frightened; or offensive to a sensitive taste, as, the unsightliness of an object lawful in itself. Cooley on Torts, 602; *McReynolds* v. *Railroad Co.* 106 Ill. 152; *Railway Co.* v. *Railway Co.* 105 id. 110; *Stone* v. *Railroad Co.* 68 id. 394; *Cooper* v. *Randall,* 53 id. 24; *In re Penny,* 7 E. & B. 660; *Favor* v. *Railroad Co.* 114 Mass. 350.

There can be no recovery, under our present constitution, where the injury suffered is of the same kind as that suffered by the public. *Chicago* v. *Building Association,* 102 Ill. 379; *East St. Louis* v. *O'Flynn,* 119 id. 200; *McDonald* v. *English,* 85 id. 232; *Guest* v. *Reynolds,* 68 id. 478; *Roebette* v. *Railroad Co.* 17 Am. & Eng. Ry. Cas. 192; *Railroad Co.* v. *Eberle,* 110 Ind. 542.

There can be no recovery, unless, under the facts, the damage complained of would give rise to a right of action at common law. *Rigney* v. *Chicago,* 102 Ill. 64; *Chicago* v. *Building Association,* id. 379.

But a railroad operated by authority of law, and for a lawful purpose, is not a nuisance. *Railroad Co.* v. *Loeb,* 118 Ill. 203; *Railroad Co.* v. *Grabill,* 50 id. 241.

438 L. E. & W. R. R. Co. *v.* Scott.

The acts complained of,—viz., mental disquietude and inconveniences in mere matters of taste,—are not actionable. Cooley on Torts, 598-602; *Cooper* v. *Randall*, 53 Ill. 24; *Guest* v. *Reynolds*, 68 id. 478; *Owen* v. *Henman*, 1 W. & S. 548; *Sparhawk* v. *Railroad Co.* 54 Pa. St. 401.

Nor is operating the railroad an actionable offense, merely because there is a liability to frighten teams. Cooley on Torts, 617; *Favor* v. *Railroad Co.* 114 Mass. 350; *Railroad Co.* v. *Stinger*, 78 Pa. St. 219; *Macomber* v. *Nichols*, 34 Mich. 21; *Stone* v. *Railroad Co.* 68 Ill. 394; *Hahn* v. *Railway Co.* 51 Cal. 605.

Hence, under the facts in this case, if the plaintiff is damaged at all, it is *damnum absque injuria.* *In re Penny*, 7 E. & B. 660; *Railway Co.* v. *Ogilvy*, 2 Macg. 229; *Ricket* v. *Railway Co.* L. R. 2 H. L. 175.

Mr. Robert E. Williams, and Mr. Isaac N. Phillips, for the appellee:

One of the elements of damage is the obstruction of the right and means of access to the plaintiff's premises. *The Brereton case*, 67 Ill. 477; *Winkel's case*, 77 id. 56; *The Eaton case*, 83 id. 535; *The Rigney case*, 102 id. 64; *Reisch's case*, 101 id. 157; *City* v. *Building Association*, 102 id. 379; *Railroad Co.* v. *Ayers*, 106 id. 511; *Bowman's case*, 122 id. 595.

Per Curiam: We are satisfied with the reasoning and conclusions of the Appellate Court, and the judgment of that court will therefore be affirmed.

*Judgment affirmed.*

Mr. Justice Bailey, dissenting.